# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TIFFANY LYNCH**<br>155 2nd Avenue, Apt. B,<br>Royersford, PA 19468<br><br>*Plaintiff,*<br><br>vs.<br><br>**JLL HOSPITALITY LLC *d/b/a* CHICK-FIL-A WAYNE SQUARE**<br>319 E. Lancaster Avenue<br>Wayne, PA 19087<br><br>-and-<br><br>**JOSHUA GRIMM, Individually**<br>319 E. Lancaster Avenue<br>Wayne, PA 19087<br><br>*Defendants.* | No. _____<br><br>CIVIL ACTION<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, Tiffany Lynch (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by the JLL Hospitality LLC *d/b/a* Chick-Fil-A Wayne Square and Joshua Grimm, individually (hereinafter referred to as "Defendants") of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq*.), and the Pennsylvania Human Relations Act ("PHRA - 43 Pa. C.S. §§ 951 *et. seq*.).[1] Plaintiff asserts

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit pursuant to the PHRA from date of dual-filing with the EEOC. Plaintiff's PHRA claims

herein that she was terminated, subjected to a hostile work environment, and retaliated against by Defendants, her previous employer, in violation of these laws and seeks damages as set forth more fully herein.

## JURISDICTION AND VENUE

2. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. State of Washington</u>, 326 U.S. 310 (1945) and its progeny.

3. This action is initiated pursuant to federal law(s). The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as her federal claims herein.

4. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendants reside in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff has satisfied the procedural and administrative requirements for proceeding with an action under Title VII.

6. Plaintiff filed a timely written charge of discrimination with the Equal Employment Opportunity Commission alleging violations of said statute.

---

however will virtually mirror her claims currently filed pursuant to Section 1981 and Title VII and will be amended as to Defendant Grimm individually as well.

7. Plaintiff's charge was cross-filed with the Pennsylvania Human Relations Commission.

8. The instant action is timely because it was initiated within ninety ("90") days after the receipt of a Right to Sue letter from the EEOC mailed on or about December 3, 2025.

9. Plaintiff has exhausted federal administrative remedies as to the allegations of the instant Complaint.

**PARTIES**

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is an adult individual, with an address as set forth in the caption.

12. Defendant, JLL Hospitality LLC *d/b/a* Chick-Fil-A Wayne (*hereinafter* "Defendant Chick-Fil-A" when referred to individually) operates as a popular chain restaurant as a franchisee out of the above-captioned address.

13. Defendant, Joshua Grimm (*hereinafter* "Defendant Grimm" when referred to individually) is the President, Operator of Defendant Chick-Fil-A and controlled the terms and conditions of her employment.

14. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendant.

**FACTUAL BACKGROUND**

15. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

16. Plaintiff is a Black (African-American) gay female.

17. Plaintiff was hired by Defendants on or about December 19, 2023; and in total, I was employed by Defendants for almost two (2) years until her unlawful termination on or about November 10, 2025 (discussed in detail *infra*).

18. Plaintiff was employed in the title of Executive Director of Operations for Defendant Chick-Fil-A.

19. In this capacity, Plaintiff reported to Defendant Grimm (Caucasian male), the President, Operator and owner of Defendant Chick-Fil-A.

20. Plaintiff subjected to a hostile work environment and then terminated retaliatorily, as explained more *infra* after enduring non-stop racial and gay slurs from Grimm (in addition to other related impropriety).

21. During Plaintiff's last approximately 6-7 months of employment, she had become vocal about her dislike for Defendant Grimm's discriminatory jokes, commentary, gestures, and disparate treatment.

22. The treatment Defendant Grimm subjected Plaintiff to was sever and frequent such that she had no choice but to object to him directly (as the highest level of management at Defendant Chick-Fil-A) and ask him to stop.

23. Some examples of Defendant Grimm's discriminatory and hostile behavior and comments include but are not limited to:

   a. There were much less Black staff in the workplace than non-Black staff. If any Black staff engaged in an error or questionable conduct, they were (by Defendant Grimm) held to a higher or different standard than white employees and treated much more harshly (by way of communication, discipline or termination);

   b. Defendant Grimm used the term "nigger" many times in Plaintiff's presence. For example, Defendant Grimm frequently told stories that he had an all-white upbringing and when he met his first Black person he said, "what's up my nigger." He told this story regularly emphasizing the term

      "nigger;"

c. Defendant Grimm would say things like he is going out and wants to score points with some Black guys so Plaintiff should go out with him, among other iterations of these types of statements;

d. When Defendant Grimm attended a meeting or event (such as in Atlanta, Georgia, for example), he made comments upon his return that he had to talk with white people since he was not cool enough to have any Black people talk to him;

e. Defendant Grimm would make derogatory comments about Black clientele either directly or insinuating they smell, they will require extra cleanup, they are going to be cheap, about food stereotypes, "we don't take food stamp"-type of comments, or other statements exhibiting a general dislike for the race. He did not make these same types of racist or stereotypical comments with Caucasians, regardless of their smell or appearance. It was clear racism, as he made such comments even about clean, professional-looking, or well-to-do Black clientele;

f. There were no concerns whatsoever with hiring a non-Black person who was from the inner city or who used slang. Yet, there was constant pushback if a Black employee was considered for hiring. On one occasion, a well-spoken and professional Black male employee Nasir Stanley was employed by Defendant Chick-Fil-A. Anytime Plaintiff tried to hire a Black employee, Defendant Grimm would question the person asking, "Is the person "Nasir black" or "ghetto black.""

g. Defendant Grimm commented that he can fire particular Hispanic cooks for "any reason we want" since they are "illegals" or "not legal." He said this in relation to their race (Hispanic), even though some of the people he referred to were legal (while others were not);

h. Defendant Grimm would regularly direct Plaintiff to get this or that "out of the closet" and made comments that she might not come back "out of the closet" or that he did not want Plaintiff to have to come out of the closet again (in reference to her sexual orientation and "coming out" as gay);

i. When a $20 bill was given by clientele as a form of payment had "gay money" written on it, Defendant Grimm made a point to laugh and keep saying Plaintiff's name was on the $20 bill.

24. Defendant Grimm's comments relating to race and sexual orientation were frequent, occurring on a daily basis whenever Plaintiff saw Defendant Grimm.

5

25. These comments made Plaintiff feel uncomfortable and discriminated against.

26. Because his comments were so intense and so frequent, Plaintiff became quite vocal in objecting to his behavior and comments during her last approximate 6-7 months of employment.

27. Plaintiff informed Defendant Grimm that what he was saying and doing was "discrimination."

28. Plaintiff expressed personal offense when he made a sexual orientation or racist comment about her or clientele, and she gave pushback related to Defendant Grimm's discriminatory hiring practices, stating to him that he should not discriminate against black applicants when he was trying to discourage certain hires asking if they were "ghetto."

29. Instead of ceasing his discriminatory and offensive behavior, Defendant Grimm continued the same and conducted himself in a completely entitled and immature manner constantly being unprofessional.

30. Defendant Grimm's sister was Defendant Chick-Fil-A's human resources personnel, resulting in no meaningful or actual redress to concerns of discrimination at Defendant Chick-Fil-A.

31. Plaintiff's complaints of discrimination were not meaningfully investigated and Defendant Grimm's behavior did not stop.

32. Defendant Grimm became noticeably frustrated with Plaintiff when she was expressing her concerns and setting non-discrimination boundaries.

33. These things occurred in close time to Plaintiff's ultimate pretextual termination.

34. Plaintiff was on a pre-scheduled vacation (with approval dating back to February 2025) from on or about November 3, 2025, through on or about November 8, 2025.

35. Plaintiff typically created and posted the work schedule for employees on each

Thursday for the following week's schedule in conjunction with her job at Defendant Chick-Fil-A and did not need approval or sign off from Defendant Grimm in doing so during her two year tenure.

36. During the week Plaintiff was on her pre-scheduled vacation, but Defendant Grimm posted the work schedule on or about (Saturday) November 8, 2025, *since Plaintiff was on vacation* (even though he should have posted the schedule on November 6, 2025 (because it is posted on Thursdays per ordinary practices).

37. Within just minutes of Defendant Grimm posting the work schedule in the evening of November 8, 2025, Plaintiff's company access was cancelled, and she could not participate in company email communications.

38. As a result, on November 9, 2025 Plaintiff raised a concern to Chick-Fil-A corporate, Alvin Thompson (*hereinafter* "Thompson") via email outlining the history of discrimination and retaliation by Defendant Grimm, voicing how her complaints have gone unanswered, and how any reports of discrimination would go directly to Defendant Grimm himself, such that she was desperately seeking escalation outside of Defendant Chick-Fil-A for assistance from corporate/franchisor Chick-Fil-A.

39. In response to Plaintiff's email, Thompson simply stated he was unable to help:

```
From: Al Thompson <alvin.thompson@cfacorp.com>
Date: November 10, 2025 at 8:06:49 AM EST
To: Tiffany Lynch <tml343@yahoo.com>
Subject: Re: Urgent: Workplace Harassment, Retaliation, and Discrimination Concerns


Tiffany,

Good morning.

As a follow up to our conversation, I am unable to provide any guidance.

Regards,
Al Thompson
```

40. Upon returning from vacation the following date on November 10, 2025, Grimm informed Plaintiff she was terminated. When Plaintiff asked why she was terminated, Defendant Grimm absurdly stated that she was being terminated because she did not ask Defendant Grimm for approval for how she scheduled staff in the schedule she had prepared and disseminated in the week prior to her vacation.

41. Plaintiff was completely confused because she always handled all scheduling without Defendant Grimm's need for review and posted such schedules without his approval.

42. What Defendant Grimm said was not logical, not terminable, and in fact Plaintiff always included any suggestions or desires into the schedule that he preferred or expressed from time to time (without his need to review a final version) and Plaintiff had done so in the schedule to which he referred as well.

43. Weeks following Plaintiff's termination Defendants got around to sending me a termination letter (signed by Defendant Grimm) dated November 26, 2025, stating in pertinent part:

> Tiffany:
>
> This letter serves as written confirmation that JLL Hospitality LLC dba Chick-fil-A Wayne Square has terminated your employment effective 10 November 2025. You were terminated due to subpar performance.

44. This changing reason for termination is also false and pretextual as Plaintiff performed her job well and Defendants had never raised any concerns of alleged subpar performance at any time during Plaintiff's employment.

45. Further, prior to her abrupt termination, Plaintiff had not been issued a progressive discipline which Defendants' policies or practices should have occurred prior to termination even if there was any concern of discipline or performance (which there was not).

## COUNT I
### Violations of 42 U.S.C. § 1981
### -Against Both Defendants-
### (Race Discrimination, Retaliation & Hostile Work Environment)

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47. Plaintiff was subjected to a barrage of discriminatory and stereotypical comments related to her race and the race of other Black employees or clientele while employed by Defendants.

48. These actions are a part of a widespread practice of Defendants which establish a practice of stereotyping and discriminating against Plaintiff on the basis of her race, as well as other Black employees or clientele.

49. Defendant Grimm, Plaintiff's supervisor and the owner/operator of Defendant Chick-Fil-A personally engaged in this discrimination.

50. Plaintiff regularly complained about and objected to this discriminatory treatment.

51. Instead of meaningfully addressing Plaintiff's concerns, Plaintiff was ignored and then abruptly terminated for pretextual and changing reasons.

52. Plaintiff believes and therefore avers that her race was the motivating or determinative factor in Defendants' decision to terminate her employment.

53. Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated because of her complaints about race discrimination, and/or her complaints about unlawful retaliation under 42. U.S.C. § 1981.

54. Defendant Grimm is personally liable for the aforesaid violation of section 1981 as he aided, abetted, and participated in the aforesaid discriminatory and retaliatory acts.

These actions as aforesaid constitute violations of 42. U.S.C. § 1981.

## COUNT II
### Violations of Title VII
### -Against Defendant Chick-Fil-A only-
### (Race Discrimination, Retaliation & Hostile Work Environment)

55. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56. Plaintiff was subjected to a barrage of discriminatory and stereotypical comments related to her race and the race of other Black employees or clientele while employed by Defendants.

57. These actions are a part of a widespread practice of Defendants which establish a practice of stereotyping and discriminating against Plaintiff on the basis of her race, as well as other Black employees or clientele.

58. Defendant Grimm, Plaintiff's supervisor and the owner/operator of Defendant Chick-Fil-A personally engaged in this discrimination.

59. Plaintiff regularly complained about and objected to this discriminatory treatment.

60. Instead of meaningfully addressing Plaintiff's concerns, Plaintiff was ignored and then abruptly terminated for pretextual and changing reasons.

61. Plaintiff believes and therefore avers that she was terminated, retaliated against, and subjected to a hostile work environment because of her race and/or her objections to/complaints of race discrimination. These actions as aforesaid constitute unlawful discrimination and retaliation and a hostile work environment under Title VII.

## COUNT III
### Violations of Title VII
### -Against Defendant Chick-Fil-A only-
### (Gender/Sexual Orientation Discrimination, Retaliation & Hostile Work Environment)

62. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10

63. Plaintiff was subjected to a barrage of discriminatory and stereotypical comments regarding her sexual orientation while employed by Defendants.

64. These actions are a part of a widespread practice of Defendants which establish a practice of stereotyping and discriminating against Plaintiff on the basis of her sexual orientation

65. Defendant Grimm, Plaintiff's supervisor and the owner/operator of Defendant Chick-Fil-A personally engaged in this discrimination.

66. Plaintiff regularly complained about and objected to this discriminatory treatment.

67. Instead of meaningfully addressing Plaintiff's concerns, Plaintiff was ignored and then abruptly terminated for pretextual and changing reasons.

68. Plaintiff believes and therefore avers that she was terminated, retaliated against, and subjected to a hostile work environment because of her gender/sexual orientation and/or her objections to/complaints of gender/sexual orientation discrimination. These actions as aforesaid constitute unlawful discrimination and retaliation and a hostile work environment under Title VII

**WHEREFORE**, Plaintiff prays that this Court enter an order providing that:

A. Defendants are to be prohibited from continuing to maintain their illegal policy, practice, or custom of retaliating against employees and is to be ordered to promulgate an effective policy against such discrimination/retaliation and to adhere thereto (awarding Plaintiff such injunctive and/or equitable relief);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, bonuses and medical and other benefits;

C. Plaintiff is to be awarded punitive damages as permitted by applicable law, in an

amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to emotional distress/pain and suffering damages - where permitted under applicable law(s));

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

Ari R. Karpf, Esq. (91538)
Allison A. Barker, Esq. (326837)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com
abarker@karpf-law.com

Dated: January 29, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Tiffany Lynch | : | CIVIL ACTION |
| v. | : | |
| JLL Hospitality LLC d/b/a Chick-fil-a Wayne Square, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (x)

| | | |
|---|---|---|
| 1/29/2026 | _[signature]_ | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: __Defendants place of business__

---

*RELATED CASE IF ANY:* Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit? Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A. Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Wage and Hour Class Action/Collective Action
6. ☐ Patent
7. ☐ Copyright/Trademark
8. ☐ Employment
9. ☐ Labor-Management Relations
10. ☒ Civil Rights
11. ☐ Habeas Corpus
12. ☐ Securities Cases
13. ☐ Social Security Review Cases
14. ☐ Qui Tam Cases
15. ☐ Cases Seeking Systemic Relief *see certification below*
16. ☐ All Other Federal Question Cases. *(Please specify)*:_____

*B. Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify)*:_____
7. ☐ Products Liability
8. ☐ All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
LYNCH, TIFFANY

**(b)** County of Residence of First Listed Plaintiff: **Montgomery**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS
JLL HOSPITALITY LLC D/B/A CHICK-FIL-A WAYNE SQUARE, ET AL.

County of Residence of First Listed Defendant: **Delaware**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / **PERSONAL PROPERTY** / [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** — **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [X] 442 Employment / [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education / [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Section 1981 (42USC1981); Title VII (42USC2000)

Brief description of cause:
Violations of Section 1981, Title VII and the PHRA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
- **DEMAND $**
- CHECK YES only if demanded in complaint:
- **JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 1/29/2026
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____